**STATE of Missouri,**
**Plaintiff/Respondent,**

v.

**Bruce Gerard ORANDO,**
**Defendant/Appellant.**

**No. ED 91349.**

Missouri Court of Appeals,
Eastern District,
Division Four.

April 21, 2009.

Robert J. (Jeff) Bartholomew, Assistant Attorney General, Jefferson City, MO, for respondent.

Ellen H. Flottman, Columbia, MO, for appellant.

KATHIANNE KNAUP CRANE, Presiding Judge.

Defendant, Bruce Gerard Orando, appeals from a judgment entered upon a jury verdict finding him guilty of criminal non-support, in violation of section 568.040 RSMo (2000).[1] The trial court sentenced defendant to four years imprisonment, suspended the execution of the sentence, and placed defendant on probation for five years. For his sole point on appeal, defendant asserts that the trial court erred in overruling his motions for judgment of acquittal because the state did not produce sufficient evidence that defendant knew or was aware he owed child support during the consecutive six-month period when he did not pay child support. We affirm.

Defendant is the father of T.D.O., born in 1996 to Lisa Stuart (mother). On March 15, 1998, defendant was ordered to pay $477 in monthly child support to moth-

---

1. All subsequent statutory references are to RSMo (2000).

er for T.D.O.'s support. This support order has never been modified. In 2002, defendant was in arrears in the amount of $12,000. This arrearage was the subject of a court action, and defendant paid the arrearage in October 2002. However, in May 2003, defendant again stopped paying support. Since April 2003, defendant had made only three monthly payments—in October 2005, November 2005, and January 2006. Specifically, defendant did not pay any monthly child support from October 2004 through March 2005. Mother testified that she never told defendant he did not have to make child support payments. Defendant admitted paternity, that he was aware of the support order, that he was aware the state was requiring him to pay child support, that there was never a modification, and that he did not pay child support from October 2004 through March 2005. Although he testified that he did not pay during these months because he believed he had agreed with mother to pay his $12,000 arrearage in exchange for the termination of his child support obligation, he also testified that he did not pay during these months because (1) he was seeking to modify his child support obligation because he was unemployed and could not pay, and (2) he did not know how much he owed since he believed the state was going to modify the amount based on his request.

### DISCUSSION

For his sole point on appeal, defendant contends that the trial court erred in denying his motions for judgment of acquittal because there was insufficient evidence to prove beyond a reasonable doubt that defendant knowingly failed to pay child support for the months of October 2004 through March 2005. Defendant relies on his testimony that he believed that he reached an agreement with mother in November 2002 by which he would pay his outstanding $12,000 child support arrearage in return for the termination of his child support obligation.

"A directed verdict of acquittal is authorized only where there is insufficient evidence to support a guilty verdict." *State v. Morovitz*, 867 S.W.2d 506, 508 (Mo. banc 1993). In reviewing the sufficiency of evidence underlying a jury verdict, we must determine whether there was sufficient evidence from which a reasonable juror could have found each element of the offense to have been established beyond a reasonable doubt. *State v. Reed*, 181 S.W.3d 567, 569 (Mo. banc 2006). On review, we view the evidence in the light most favorable to the verdict, including favorable inferences that may be drawn from the evidence, and disregard all evidence and inferences to the contrary. *Id.*; *Morovitz*, 867 S.W.2d at 508. We defer to the jury's superior position to assess the credibility of witnesses and the weight and value of their testimony. *State v. Johnson*, 244 S.W.3d 144, 152 (Mo. banc 2008).

Section 568.040.1 provides with respect to parents: "[A] parent commits the crime of nonsupport if such parent knowingly fails to provide, without good cause, adequate support which such parent is legally obligated to provide for his child or stepchild who is not otherwise emancipated by operation of law." The essential elements of a criminal nonsupport case against a parent under section 568.040 are: "(1) knowingly fails to provide, (2) without good cause, (3) adequate support, (4) that he or she is legally obligated to provide." *Reed*, 181 S.W.3d at 569.

Defendant claims that the state did not prove the "knowingly" element because defendant believed that he had made an agreement with mother to terminate his child support obligation. He argues that

the existence of the agreement was shown by his $12,000 arrearage payment in October 2002.

 Proof of the relationship of a parent to a minor child is sufficient to establish a prima facie basis for a legal obligation of support. *Reed,* 181 S.W.3d at 569. "All that is required is 'knowledge of the legal obligation to provide support in an adequate amount for the child.'" *Id.* (quoting *Morovitz,* 867 S.W.2d at 509). A "parent's knowledge of a support order is not required because 'a support order is not even a requisite to criminal liability. A parent can be prosecuted for criminal nonsupport despite the absence of such an order.'" *Reed,* 181 S.W.3d at 569 (quoting *State v. Watkins,* 130 S.W.3d 598, 600 (Mo. App.2004)). "Every parent has a legal obligation to provide for his or her children regardless of the existence of a child support order." *Reed,* 181 S.W.3d at 570. "The purpose of the criminal nonsupport statute is to compel recalcitrant parents to fulfill their obligations of care and support; the purpose is not to enforce court-ordered child support obligations." *Id.* Accordingly, in a prosecution under section 568.040, the existence of a child support order is merely evidence of what constitutes "'adequate support.'" *Id.* (quoting *State v. Sellers,* 77 S.W.3d 2, 5 (Mo.App.2002)).

Defendant's testimony that he and mother agreed that if he paid the $12,000 arrearage, her husband would adopt T.D.O. sometime in 2003 and defendant's support obligation would terminate, does not provide a basis for reversal. In the first place, it was within the jury's discretion to disbelieve this testimony. *State v. Coe,* 233 S.W.3d 241, 251 (Mo.App.2007) (citing *State v. Hineman,* 14 S.W.3d 924, 927 (Mo. banc 1999)). Further, there was substantial evidence that defendant's failure to pay child support from October 2004 through March 2005 was done knowingly. Defendant knew he was T.D.O.'s father. This parent-child relationship gave rise to a legal obligation of support. *Reed,* 181 S.W.3d at 569. Although defendant testified to a purported agreement that mother's husband would adopt T.D.O., defendant never testified that an adoption took place or that his parental rights had been terminated. In addition, defendant's knowledge was further evidenced by his admissions that (1) he was aware there was a decree ordering him to pay support, (2) he was aware the state was requiring him to pay support, (3) he knew the support order had not been modified, (4) he did not pay because he was seeking to modify his monthly payments given that he was unemployed and could not pay, and (5) he did not pay because he thought the amount would be modified on this basis. The trial court did not err in denying defendant's motions for judgment of acquittal. Point one is denied.

*Conclusion*

The judgment of the trial court is affirmed.

MARY K. HOFF, J., concurs.

KENNETH M. ROMINES, J., concurs in a separate concurring opinion.

KENNETH M. ROMINES, Judge, Concurring.

I concur in the result reached.[2] I have a firm and fixed opinion that Article I, § 11 Constitution of Missouri (1945) is simple and clear:

Art I § 11:

That no person shall be imprisoned for debt, except for nonpayment of fines and penalties imposed by Law.

**2.** Defendant did not raise Art I § 11 as a defense.

The defendant in this case is imprisoned for debt. I continue to adhere to my views expressed in *State v. Ecford,* 198 S.W.3d 156, 160–61 (Mo.App. E.D.2006) (concurring opinion).